# WARNER *v.* GODFREY.

APPEAL FROM THE COURT OF APPEALS OF THE DISTRICT OF
COLUMBIA.

No. 191. Argued April 25, 1902.—Decided June 2, 1902.

This was a bill, filed by the appellee to establish her title to land in the
city of Washington, of which she claimed to have been defrauded. The
main asserted badges of fraud were a gross inadequacy of consideration,
and other matters stated in the opinion of the court. Both the trial and
the appellate courts concurred in holding that the proof vindicated the
defendants, and it is held by this court that the entire want of founda-
tion for the charges of wrongdoing urged against the defendants, and
upon which the long litigation proceeded, may be taken as conclusively
established.

The complainant, having expressly declined to put an end to the litigation
on the theory that the proof showed that she was entitled to an uncon-
ditional recovery of the property, she is not to be allowed to reform her
pleadings, and change her attitude towards the defendants, in order to ob-
tain that which she had elected not to seek, and had declined to accept.

On September 1, 1896, Lily Alys Godfrey, appellee herein,
filed a bill in the Supreme Court of the District of Columbia,
sitting in equity, to establish her title to five lots of land situ-
ated in the city of Washington, of which it was asserted she
had been defrauded by one Stephen A. Dutton.

The defendants to the bill were Dutton and wife, Louis W.
Richardson, Fred M. Czaki and Mary Alice Godfrey (mother
of complainant). Omitting averments relating to real estate
other than that now in controversy, it suffices to say that the
bill detailed grossly fraudulent and criminal practices, by which
Dutton, without consideration, on or about March 26, 1896, ob-
tained the title to a large amount of real estate, the property of
the complainant, including that now in controversy, that is,
lots 1, 2, 3 and 66, in a subdivision of block 134, in the city of
Washington. It was averred that by a deed recorded April 13,
1896, Dutton and his wife conveyed, without consideration and
fraudulently the lots in question to the defendant Richardson.
The latter answered the bill on December 1, 1896, and averred
that he was a *bona fide* purchaser of the property, without no-

Opinion of the Court.

tice, actual or constructive, of any equity of the complainant; that, through his brokers or agents, B. H. Warner & Co., he had paid full consideration to Dutton for the property, and he annexed to the answer, as a part thereof, the contract of purchase from Dutton, a copy of which is in the margin.[1]

---

[1] " Brainard H. Warner.          Louis D. Wine.
     Geo. W. F. Swartzell.        Clarence B. Rheem.

" Office of B. H. Warner & Co., 916 F. St. N. W., Washington, D. C.

" Articles of agreement, made and entered into this 10th day of April, A. D. one thousand eight hundred and ninety-six, by and between————, party of the first part, and Louis W. Richardson, party of the second part, in manner and form following: The said party of the first part in consideration of the sum of five hundred (500) dollars to his agents, B. H. Warner & Co., duly paid as a deposit, the receipt whereof is hereby acknowledged, hereby agrees to sell unto the party of the second part, the following-described real estate in the city of Washington and District of Columbia: Lots 66, 1, 2 and 3, square 134, Washington, D. C.

" For the sum of twenty-five thousand (25,000) dollars, which the said party of the second part agrees to pay to the said party of the first part as follows:

" Seventy-five hundred (7500) cash, balance seventeen thousand five hundred (17,500) to be assumed, secured by deed of trust on the said described property, with interest at the rate of six per cent per annum, payable ———, which amount is now upon the property and secured by a trust or trusts, and the said party of the first part, on receiving such payment at the time and in the manner above mentioned, shall execute, acknowledge and deliver to the said party of the second part, or to his heirs as assigns, a special warranty deed and conveyance, assuring to them the fee simple of the said premises free from all incumbrances, except as to the trust referred to above, which deed shall contain the usual full covenants. The terms of sale to be complied with in five days from the date hereof, and said deposit to be applied in part payment of the purchase of the said described real estate. Title to be good and marketable or deposit returned.

" And it is understood that the stipulations aforesaid shall apply to and bind the heirs, executors, administrators and assigns of the respective parties.

" In witness whereof the parties to these presents have hereunto set their hands and seals the above day and date.

        (Signed)              " S. A. Dutton.      [Seal.]
        (Signed)              " L. W. Richardson.  [Seal.]

" Signed, sealed, and delivered in the presence of—
        (Signed)  " Ellen S. Mussey,
                  " As to S. A. Dutton.
        (Signed)  " C. B. Rheem,
                  " As to L. W. Richardson."

On March 28, 1897, a decree *pro confesso* was entered as to one of the lots of land affected by the bill, which is not involved in this controversy, and title to which remained in Dutton. By the decree the legal title to said lot was established in the complainant.

By an amended bill filed on May 1, 1897, Warner and Wine were made defendants to the cause. The amendment added to the clause in the original bill, which charged that the conveyance to Richardson was without consideration, the following:

"That the said Richardson was only a nominal party to the said transaction; the real parties were the said Dutton, on the one part, and Brainard H. Warner and Louis D. Wine, on the other; that the said Wine and Warner pretend that they advanced or furnished to the said Dutton the sum of six thousand five hundred and eighty-six and $\frac{33}{100}$ ($6586.33) dollars, and took from the said Dutton the said conveyance to the said Richardson to secure the repayment of the said sum so claimed to have been advanced. Whether said Warner and Wine actually furnished said Dutton such sum or any sum whatsoever the complainant cannot affirm or deny, and demands strict proof in that behalf, and she avers that the said Warner and Wine had such notice of the frauds of the said Dutton as herein set forth, and of such facts and circumstances as put them on inquiry as to the conveyance to said Dutton, that in equity they should have no benefit from said conveyance to said Richardson, but the same should be decreed to be cancelled and held for naught."

On July 17, 1897, before any pleading by Warner and Wine, an amended and supplemental bill was filed, accompanied with numerous interrogatories required to be answered by the defendants Warner and Wine. The averments of the original bill as to the fraudulent practices by which Dutton had obtained the property of complainant were reiterated. As respects the defendants Warner and Wine, it was charged that Dutton, on March 29, 1896, with the object of consummating the fraud which he had practiced upon the complainant, "entered into negotiations with said B. H. Warner & Co., or said defendants, Warner and Wine, through one Ellen S. Mussey, a lawyer of said city, to whom he applied for a loan on the security of this

complainant's said property, and on information and belief this complainant charges that said Ellen S. Mussey, after bringing the matter to the attention of the said B. H. Warner & Co., or said Warner and Wine, reported to the said Dutton that a loan of from twenty-five to thirty thousand dollars could readily be negotiated on the security of said property, and stated that if he would return the following week she would have everything in readiness to complete the transaction.   Accordingly the said Dutton came again to the said city of Washington on or about the 10th day of April, then next, and, going to the office of said B. H. Warner & Co., then and there signed a paper-writing or contract agreeing to sell all of said lots in square one hundred and thirty-four at and for the grossly inadequate price of twenty-five thousand dollars, said sum being less than one half the price or consideration at which the said B. H. Warner & Co., had been authorized to sell the said lots by said Mary Alice Godfrey."

After averring that, by reason of the circumstances referred to, the defendants were put upon notice as to whether Dutton had honestly acquired the property, it was charged that it was the duty of defendants to have notified the complainant of the proposition of Dutton, but that no notice, in fact, was given. It was averred, moreover, that the said firm and the defendants Warner and Wine " purposely and intentionally concealed the fact that the said Dutton had signed the aforesaid contract to sell said lots at and for the grossly inadequate sum of $25,000, and that he was eager and anxious to dispose immediately of said lots so soon after acquiring the same."   And further it was averred that " the said defendants, Warner and Wine, immediately set about the acquisition of said lots for their own benefit, and, with a view to, and for the purpose of, concealing their connection with said transaction, caused the title to the said lots to be conveyed to defendant Richardson by a pretended deed, bearing date the 13th day of April, 1896," and that said Richardson, because of his youth and inexperience and his relationship to the defendant Wine, and his connection in business with the firm of B. H. Warner & Co., " was chosen as the instrument or tool of the said defendants Warner and Wine,

for the consummation of their schemes to get possession of this complainant's said property for the said grossly inadequate sum of twenty-five thousand dollars."

A joint and several answer was filed on behalf of Warner and Wine, and therein it was averred that the lots in question were bought by them in good faith for an adequate consideration, and that the title was taken in the name of Richardson merely for the purpose of convenience in making subsequent conveyances.

Issue having been joined, testimony was taken, and in all about one hundred and forty witnesses were examined. But a portion only of the evidence, embodied in 600 printed pages, has been submitted for the inspection of this court. The court below, however, referred to the record as an "immense" one, and it was stated that the greater part of the evidence consisted of the testimony of witnesses introduced to contradict on the one hand or to support on the other the denial of the defendant Warner, made under oath in his answer to the amended bill and in answers to special interrogatories, that he had had any acquaintance with Dutton or ever had any business relations with him of any description until the transaction of April, 1896. This latter testimony is not contained in the printed record filed in this court.

The trial court decreed in favor of the defendants. In the opinion by it delivered the evidence respecting the different circumstances relied upon by the complainant to establish her case was reviewed, and it was held that the evidence was inadequate to support the charge of either actual or constructive fraud on the part of the defendants Warner and Wine.

Respecting one of the alleged circumstances charged to constitute a badge of fraud, viz., that Warner and Dutton were acquainted and had business dealings together prior to the sale in question, the court upheld the contention of Warner that he had had no acquaintance or dealings with Dutton prior to said purchase. Referring to the evidence on this branch of the case, the court said:

"A most careful examination has satisfied me beyond doubt that the entire testimony adduced in behalf of the complainant

designed to show that Warner was ever in the company of Stephen A. Dutton on either of the occasions as described is absolutely untrue, and that by far the greater part of it consists of unfounded falsehoods, uttered from bad motives and attempted to be sustained by deliberate perjury."

The appellate court coincided with the opinion of the trial court, that the evidence introduced at the hearing failed to sustain the claim that there had been either actual or constructive fraud, as alleged in the bill, on the part of Warner and Wine, and that on the contrary the proof showed there was no ground for awarding the relief prayed in the bill. It was, however, held that "from another point of view, made clear by the testimony, though it may not be specifically presented by the pleadings," the complainant, standing in the stead of Dutton, was entitled to disaffirm the sale and recover the property from Warner and Wine on repaying to said defendants the price actually paid by them to Dutton for the property and such further sums as might have been paid by them in the discharge of taxes and encumbrances. The ground for this conclusion was as follows : That the testimony showed that the firm of B. H. Warner & Co. were the agents of Dutton in negotiating the sale ; and as it was further shown that Richardson, the purchaser named in the contract, was only an ostensible buyer, and that Warner and Wine, members of the firm of B. H. Warner & Co., were the real purchasers, and as it appeared that the fact of the purchase by Warner and Wine was not made known to Dutton, the latter would have had a right, by a "timely bill filed for that purpose," to set aside the sale on the ground that his agents had been unfaithful to their trust by buying the property of their principal for their own account without the knowledge and consent of their principal ; that this right, thus existing in Dutton might be availed of in equity by the complainant, as the equitable owner of the property. As, however, the court found that the act of Warner and Wine in buying the property through their firm, as agents of Dutton, involved no intentional wrong, but constituted a mere legal or constructive fraud, it was held that the complainant in order to obtain equity must do equity, and that she could not avail of her right to dis-

affirm the purchase by Warner and Wine without reimbursing them for the money actually paid by them to Dutton, and such other sums, if any, paid by them in the discharge of taxes and encumbrances, less such sums as had been received, or ought in the exercise of due diligence to have been received, as rents and profits of the property. After deciding that upon such payment the defendants should be decreed to reconvey the property to the complainant, the court said (16 App. D. C. 117):

"It may be that, to obtain this relief, the bill will have to be amended to some extent. If so, it can be done without re-opening the case for further testimony. Doubtless, too, a reference to the auditor will be necessary for a statement of the account between the parties before a final decree can be entered.

"It follows that the decree dismissing the bill must be reversed, and the cause remanded, with directions to vacate the said decree, and take such further proceedings in accordance with this opinion as may be expedient and proper.

"The costs of this appeal will be divided equally between the parties."

Upon the filing of the mandate of the Court of Appeals in the Supreme Court of the District, the complainant prepared an amendment to the bill, in which it was averred that the defendants Warner and Wine, as members of the firm of B. H. Warner & Co., were agents of the defendant Dutton to find a purchaser for the lots in question; that said defendants did not inform Dutton that they were the real purchasers of the lots; that in consequence of such fact the purchase was fraudulent at law and voidable at the election of Dutton or of the complainant, for whom Dutton held title under a constructive trust, by reason of his fraudulent conduct in the premises. The amendment also contained an averment of a willingness, upon reconveyance of the title, to repay such sums as had been expended by the defendants for and on account of the property.

This proposed amendment to the bill was served upon the defendants accompanied with a notice that it was the intention of the complainant to apply to the court for leave to file the amendment and at the same time to ask a reference of the cause to an auditor to state the account without affording the defend-

ants the opportunity of taking testimony to disprove the allega-
tion of the amendment that the firm of B. H. Warner & Co.
were agents of Stephen A. Dutton. The defendants at once
filed an answer to the amendment, in which the following aver-
ments were contained:

"1. They deny that the firm of B. H. Warner & Co. were
agents for the defendant Stephen A. Dutton, to find a pur-
chaser for the real estate in controversy, as alleged by said
amendment, or that the said firm or any of its members ever
were the agents of the said Stephen A. Dutton for any purpose
whatsoever. It is true that in Exhibit L. W. R. No. 1, filed as
an exhibit to the answer of the defendant Louis W. Richard-
son, to the original bill in this cause, 'B. H. Warner & Co.,'
are mentioned as agents of unnamed parties of the first part,
but they aver that this circumstance grew out of the fact that
a printed form of memorandum of sale belonging to the said
firm, in which their names were printed as agents of the vendor,
was used in the transaction, the same being the said Exhibit
L. W. R. No. 1, and by a purely clerical omission the name of
the said firm was not struck out and that of Mrs. Ellen S. Mus-
sey, who was the only agent of the said Stephen A. Dutton in
the matter, inserted instead. So far from being the agents of
Stephen A. Dutton, neither of these defendants nor any mem-
ber of the firm of B. H. Warner & Co. was aware at the time
the said memorandum of sale was prepared who was the owner
of the property described in it, agency for which owner is now
sought to be charged upon them, and the name of the vendor was
accordingly left blank in the said memorandum for that reason.
Both the said Ellen S. Mussey, who was the agent of the said
Stephen A. Dutton, and the said Stephen A. Dutton himself
well knew throughout the entire transaction that the firm of
B. H. Warner & Co. represented the purchaser of the said prop-
erty, and in no way represented or claimed to represent the
said Stephen A. Dutton."

The answer further averred that, in the beginning of the
controversy, the defendants had offered to convey to complain-
ant the property in dispute upon being reimbursed simply the
money which they had actually expended, and that this offer

was rejected; that the complainant having thus rejected said offer, and having subjected the defendant to the expense of a long and costly lawsuit to disprove the charges of fraud and wrong made against them, which they had successfully done, and the defendants, in doing this, having been compelled to pay out more than $6000 in costs and expenses, it was inequitable to allow the complainant to amend her bill by substituting a new and distinct ground of relief, and upon such ground to allow her to recover the property on simply reimbursing the defendants the amount of the purchase price and their actual outlay in the care of the property, without any allowance of interest or repayment of the expenses of the litigation. It was insisted, moreover, in the answer that, if the amendment was allowed, the defendants were entitled to be heard, in order to show that the averments contained in it were untrue, as specially set up in the answer. The court allowed the proposed amendment to be filed, and, doubtless conforming to the opinion of the Court of Appeals, where it was stated that the bill could be amended "without reopening the case for further testimony," in effect denied the right of the defendant to offer any testimony to disprove the truth of the averments contained in the amendment by ordering a reference to the auditor with directions simply to ascertain and report to the court "the amount of the money actually paid by Warner and Wine to the defendant Dutton, and of other sums which they had paid in discharge of the taxes and encumbrances, less such sums as had been received, or ought, in the exercise of due diligence, to be received, as rents and profits of the property from the commencement of their possession."

The auditor reported that the disbursements by Warner and Wine, for and on account of the property, for taxes, interest on trust indebtedness, water rents and repairs, exceeded the rents and profits by $3868.95, which sum added to $6586.33—the sum paid for the property by Warner and Wine less the commission—made a total of $10,455.28, and was the sum which the complainant should pay to the defendants, as a condition of divesting them of their interest in the property. It will be observed that no interest was allowed upon the outlays of War-

ner and Wine, nor was any allowance made for the costs and disbursements occasioned in making their defence in the protracted litigation. These costs and disbursements were stated to aggregate $6918.85, of which $1626.00 was for examiner's fees.

Exceptions were filed to the report of the auditor, but the same were overruled, and a final decree was entered ordering the defendants to convey the lots to the complainant upon the payment within ninety days of $10,455.28 and any further expenditure on account of the property made after the close of the account embraced in the report of the auditor. It was further provided that in the event of non-payment within the time specified the bill of complaint should stand dismissed, with costs; and in the event of payment the respective parties should pay their own costs. On appeal the decree just referred to was affirmed, and, the Court of Appeals, in its opinion, stated that "the action of the court was in strict conformity with the mandate of this court and the accompanying opinion." This appeal was then taken.

*Mr. J. J. Darlington* and *Mr. William F. Mattingly* for appellants.

*Mr. John G. Johnson* for appellees.

Mr. Justice White, after making the foregoing statement, delivered the opinion of the court.

The main asserted badges of fraud upon which the complainant based her contention that the conveyance by Dutton to Richardson on April 13, 1896, should be treated, so far as the complainant was concerned, as a nullity, were: 1. The gross inadequacy of a consideration; 2. A prior agency of the firm of B. H. Warner & Co., for the sale of the lots on behalf of the complainant; 3. The haste with which the negotiations for the sale were had and the sale was completed; and, 4. The execution of title to Richardson for the benefit of Warner and Wine and the concealment of the interest of the last-named defendants in the purchase.

To sustain and disprove these contentions voluminous evidence was introduced, which was elaborately and carefully reviewed in the opinions delivered by the courts below. Both the trial and appellate court concurred in holding that the proof absolutely vindicated the defendants from the charges of wrongdoing made against them and clearly established the want of merit in the contentions. As no appeal was taken by the complainant from the first decree of the Court of Appeals, and as the relief asked by the last amendment to the bill in effect abandoned the claim that the defendants had committed a fraud upon the complainant, by basing the claim for relief solely upon the hypothesis of a constructive fraud having been practiced upon Dutton, the entire want of foundation for the charges of wrongdoing urged against the defendants and upon which the long litigation proceeded may be taken as conclusively established.

Whatever may be said of the failure of Richardson in his answer to the original bill to fully and fairly disclose the actual transaction, certainly his not doing so did not long mislead the complainant or conceal from her the real facts. There is no question possible on this subject, since the complainant testified that shortly after the filing of the answer of Richardson to the original bill, statements of the defendant Warner made to the attorney of the complainant in the city of New York, disclosing the actual transaction, were communicated to her, and it also appears that the attorney for the defendants, in company with the defendant Wine, called upon the attorney of the complainant in the city of Washington and stated the facts of the transaction to him. With full knowledge, then, of the facts, and because of such knowledge, the amended and supplemental bill was filed making Warner and Wine defendants as the real purchasers.

The closest inspection of the bill, as originally filed or as amended, discloses no averment which can be construed as predicating relief upon the theory that Warner and Wine had practiced a constructive fraud upon Dutton by purchasing, without his knowledge and consent, property which had been placed by him in the hands of the firm of B. H. Warner & Co. for sale.

On the contrary, the sole ground of relief was the claim that Warner and Wine had in effect conspired with Dutton to defraud the complainant, and because thereof the complainant was entitled to recover the property from the said defendants without in anywise reimbursing them for their expenditures in the matter. The answer of Warner and Wine, whilst conceding that they were the real purchasers, took issue upon the charges of wrong and fraud alleged against them.

Looking into the record, we repeat, nothing is found conveying even an intimation that the parties considered during the proceedings leading up to the joinder of issue and trial which ensued that any issue existed between them than the one made by the pleadings as above stated. Indeed, the record makes clear the fact that both parties, in taking testimony, acted upon the assumption that it was a fact beyond dispute that the firm of B. H. Warner & Co. at the time of the sale represented the purchasers, Warner and Wine, and not the seller, Dutton. Thus, in interrogating the witness Mussey, who was at the time of the sale the attorney of Dutton, and who was called for the defendants, the following question was asked by counsel for complainant:

"Q. So that at the time of this transaction, in April, 1896, when you agreed with Mr. Warner and Mr. Wine to share with them the commission, they to have two thirds, or $500, and you to have one third, or $250, so far as any knowledge that you had on the subject is concerned, you were treating with them *as the brokers of Louis W. Richardson, or whoever the purchaser was.* Is that so?

"A. I treated with them as the brokers, and had no interest in who purchased it, so long as the money was paid for it."

Again, in cross-examining the defendant Wine, the following question was asked by the complainant:

"Q. Why did you conceal from Mrs. Mussey, at the time of the purchase of said property in April, 1896, your true connection with the said transaction as purchaser, and *hold yourself out as the broker or representative of the dummy in whose name you took title to the property,* taking two thirds of the commission for selling the property to yourself?"

Under the circumstances which we have stated, the first question which arises is, Was the Court of Appeals justified, after concluding every issue actually litigated, in favor of the defendants, in remanding the case for the purpose of allowing the complainant to amend the bill in order to assert a new and distinct ground of relief constituting a complete departure from the theory upon which the bill had been framed and upon which the case had been tried? And if it was so justified, was it authorized, whilst thus remanding the case for the purpose of allowing the amendment, to provide that the case should not be reopened; in other words, that the amendment could be made and relief granted on it and the defendants be deprived of all opportunity of interposing any defence? Inverting the order in which the questions have been just stated, and under the assumption that the court was justified on the record before it in remanding the case for the purpose of allowing the amendment, we think it was error to reopen the case in order to allow the amendment asserting the new and distinct ground of relief, and at the same time to treat the case as not reopened and the record as closed, the result being to deprive the defendants of all opportunity of a hearing on the new ground of relief permitted to be asserted against them. *Hovey* v. *Elliot*, 167 U. S. 409.

This conclusion would necessitate, in any event, a reversal, in order that a trial be had of the new and distinct issue raised by the amendment made under the sanction of the court. This does not, however, relieve us from the necessity of determining whether the court was justified in allowing the amendment, since, if it be found that error was committed in that particular, the appellants would be entitled to a decree of reversal, finally disposing of the controversy.

Obviously, the defendants Warner and Wine did not on the trial introduce any evidence to rebut a claim which was not made and which was in substance at war with the theory of the case propounded against them. As observed by the Court of Appeals, if the right existed in Dutton to disaffirm the sale to Richardson, as having been, in fact, made to his agents, it would have been incumbent upon Dutton, if he desired such re-

lief, to have filed "a *timely* bill for that purpose." The same obligation necessarily rested upon the complainant of distinctly and promptly asserting a right to relief of like character, if she desired such relief. This, however, was not done.

It cannot be said that the complainant failed in this particular because of ignorance on her part of the ground of relief in question, for, as we have already shown, the contract formed a part of the answer of Richardson, and the facts as to Warner and Wine being the real purchasers were known to the complainant at the time of the filing of the amended and supplemental bill. Indeed, certain also it is that every fact in the record from which the Court of Appeals deduced the conclusion that B. H. Warner & Co. were the agents of Dutton is shown to have been known to the complainant before the filing of the amended and supplemental bill. It would be highly inequitable to permit a litigant to press with the greatest pertinacity for years unfounded demands for specific and general relief, however much confidence he may have had in such charges, necessitating large expenditures by the defendants to make a proper defence thereto, and then, after the submission of the cause, when the grounds of relief actually asserted were found to be wholly without merit, to allow averments to be made by way of amendment, constituting a new and substantive ground of relief. This is especially applicable when the facts upon which such amendment rests were known at the incipiency of the litigation and the character of the relief was such as called for promptness in asserting a right thereto. Cogency is added to these considerations when it is borne in mind that if the facts had been embodied in the bill, so as to have allowed issue to be taken thereon, they might have been fully met and disproved by the defendants. Even if these general equitable considerations might, under exceptional circumstances, be not controlling, they are certainly so when the special facts in the case in hand are borne in mind. Thus it is shown that soon after the filing of the answer of Richardson, when Warner and Wine, through their attorneys, called the attention of the counsel of complainant to the fact that Warner and Wine were the real purchasers, the defendants named expressed a willingness to

treat the purchase by them from Dutton as a loan, and to convey the property to the complainant upon being reimbursed their advances and expenses. This was declined. Again, in open court, in February, 1898, the proposition was distinctly made by counsel for the defendants to treat the transaction as a loan, " and to make conveyance of the property to the complainant on being reimbursed their actual advances." The response to this proposition was couched in the following language :

" Mr. Keane : Counsel for complainant desires to say that an offer of this kind made after the suit has been commenced and after it has been in litigation since September, 1896, and after a number of witnesses have been examined upon the part of the complainant, and after the complainant has been obliged to incur heavy expenses of retaining counsel, and of incurring the further expenses necessarily incident to the preparation of the trial of the case, such a proposition comes too late, and the complainant declines such a proposition for the reasons stated, and for the further reasons that the defendants were not at the time of the alleged purchase of such property *bona fide* purchasers thereof, but had knowledge of such facts and circumstances as put them upon inquiry and deprived them of the standing in a court of equity of *bona fide* purchasers."

Thus the defendants were distinctly notified that no adjustment was possible, but that the intention was to divest them of the property without reimbursement in whole or in part.

The complainant thus having expressly declined to put an end to the litigation, upon the theory that because of the *mala fides* of Warner and Wine she was entitled to an unconditional recovery of the property, she ought not, in equity, upon the collapse of her efforts to establish fraud and bad faith on the part of the defendants, to be allowed to reform her pleadings and change her attitude towards the defendants in order to obtain that which she had expressly elected not to seek and had persistently declined to accept.

The decrees of the Court of Appeals of the District of Columbia should be

*Reversed, and the cause remanded to that court with instruc-*

*tions to reverse the decree of the Supreme Court of the District of Columbia, passed on June 13, 1900, ordering a conveyance to the complainant on compliance with certain conditions, and to affirm and reinstate the decree of the Supreme Court of the District of Columbia, passed January 24, 1899, dismissing the bill and amended bills as against certain of the defendants; and it is so ordered.*

MR. JUSTICE HARLAN and MR. JUSTICE GRAY did not hear the argument and took no part in the decision of this case.