HEALEY ICE MACH. CO. v. GREEN et al.

(Circuit Court, E. D. North Carolina. January 3, 1911.)

No. 293.

EQUITY (§ 296\*)—PLEADING—SUPPLEMENTAL BILL.

    Complainant in a suit in equity in a federal court will not be given leave to file a supplemental bill after final hearing and decision on the original bill and a prior supplemental bill, to set up facts to make a new and different case, all of which, so far as appears, were known to complainant months before the hearing and before the filing of the former supplemental bill, and some of them before the filing of the original bill.

    [Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 584–599; Dec. Dig. § 296.\*]

In Equity. Suit by the Healey Ice Machine Company against Robert Green, Louisa A. Green, and others. On application by complainant for leave to file supplemental bill. Denied.

A. B. Andrews, Jr., for complainant.

Harry Skinner, T. H. Calvert, and S. Brown Shepherd, for defendants.

CONNOR, District Judge. On the rule day, next following the filing of the decree herein, October 3, 1910, complainant presented, and asked leave to file, a supplemental bill. The facts set out in the supplemental bill are the same as those contained in the original and the supplemental bills heretofore filed and recited in the opinion filed herein. 181 Fed. 890. In addition thereto, complainant avers, as new and supplemental matter:

"(1) That R. Green, in the negotiation leading up to the contract (of purchase), requested that time be given him for payment of the balance of the

principal sum (of purchase price), and agreed that if such were done he would insure the property for the benefit of your orator, the Healey Ice Machine Company, all of which appears in the letter written by Green to your orator in that regard.

"(2) That on April 7, 1908, being at the same time and as a part of the terms and conditions upon which the sale of the property in controversy was made by Green and wife to Hill and Johnson, an agreement was entered into between the parties to said sale, together with F. J. Forbes, cashier of the National Bank of Greenville, containing, among other provisions, the following: 'And whereas it appearing to all parties concerned that a perfect title cannot, at this time, be made by the said R. Green and wife to the said R. L. Hill and D. B. Johnson, the purchasers of said ice plant property now in litigation involved in suit now pending in the United States District Court which, up to this time, has not been determined; and it further appearing that the National Bank of Greenville is the beneficial owner of a debt of $1,250 and interest, secured by a first mortgage on said premises and, in order to effectuate the intention of the parties to this instrument to convey said property subject to these aforementioned charges against said property, and for the purpose of securing the means of paying said debt due the National Bank of Greenville and of settling and adjusting all claims against said property by reason of the suit now pending, as shall hereafter be declared to be and to secure in the most effectual manner, it has been mutually agreed by and between the parties to this instrument that the deed conveying title to the said R. L. Hill and D. B. Johnson, the mortgage from the same parties to R. Green and wife securing said balance of said purchase price as enumerated in the said notes aggregating the sum of $3,500 shall be placed and deposited with the said B. J. Forbes, cashier of said National Bank of Greenville, who, it has been agreed, shall retain the same, together with all moneys arising from the collection or payments made on said notes until the entire sum of $3,500, with interest, according to the tenor of said notes, has been paid to him, or collected by him free from the control of the remaining parties to this instrument, so far as carrying out the purposes of this trust in each and every particular is concerned. The first charges upon said sum of $4,000 (the purchase price of said property), when collected and paid, being the debt due said National Bank of Greenville, by virtue of its first mortgage on said premises, and whatever sum or sums, if any, the court shall declare and adjudge to be due the Healey Ice Machine Company on account of its suit against said property and R. Green and wife referred to according to their priority. It has been agreed that, after the said two prior claims referred to and all other conditions arising under said contract of escrow shall have been paid, discharged, and performed according to said contract, balance of said moneys so remaining in the hands of said cashier shall be held by said cashier of said bank for the use and benefit of said R. Green and wife, Louisa Green, or for the use and benefit of any person or persons to whom they may have indorsed any of the notes; said indorsement being in subordination to the prior charges mentioned and referred to.  *  *  *  It has further been agreed that the said premises shall be insured by the said purchasers, the said R. L. Hill and D. B. Johnson, for the benefit of the National Bank of Greenville first, and the said R. Green and L. A. Green second, and said R. L. Hill and D. B. Johnson third, as their interest may appear.'"

The foregoing contract was executed by all of the persons named therein, and the said L. A. Green, feme covert, was privately examined in respect to her voluntary assent thereto, as provided by the statute for the execution of contracts relating to real estate by married women and recorded in the office of the register of deeds of Pitt county on the 4th day of March, 1909. The original bill herein was filed on the 14th day of December, 1906, against defendant R. Green and wife and John W. Aycock for the purpose of enforcing an alleged

mechanic's and materialman's lien upon said property. The building containing the machinery was burned on the 18th day of September, 1908, and on October 30, 1908, complainant filed its supplemental bill alleging the sale to Hill and Johnson, the issuing of the insurance policies, and the destruction of the property by fire, making said purchasers and the insurance companies parties, praying that the money due thereon be paid into this court, etc. Neither in the original nor supplemental bill was there any averment of the facts set out in the bill, now exhibited, as the basis for relief; nor is there any averment that, at the time of filing either of said bills, the facts now alleged were not known to complainant. In respect to the averment that defendant Green, in a letter to complainant, for the purpose of securing credit on account of the purchase money, promised to insure the property for its benefit, it is manifest that complainant had such knowledge when it filed the supplemental bill subsequent to the time of the destruction of the property. In regard to the agreement between the parties of April 7, 1908, it must be noted that the paper writing was not recorded until March 4, 1909—being subsequent to the date of filing the supplemental bill, October 30, 1908. The original bill was based upon the proposition that the complainant was entitled to a mechanic's and materialman's lien, under the North Carolina statute, upon the ice machine and fixtures, and the land upon which it was located, and that, having effectuated the lien by filing the notice thereof in the office of the clerk of the superior court of Pitt county, it was entitled to go into a court of equity for the purpose of enforcing it. Pending the suit, the property was sold by Green and wife to Hill and Johnson. The title being in Green and wife, under the law of North Carolina, neither could, without the concurrence of the other, incumber the property or subject it to a lien. The policies having been taken out by the mortgagors Hill and Johnson, the court was of opinion that complainants had no equity to have the proceeds applied to its debt. These conclusions resulted in a decree dismissing the bill as to complainant. It appearing to the court that the proceeds of the insurance policies had, by consent, been paid into the registry of the court, and that, as between the several defendants, it was necessary to ascertain the interests of the defendants in the amount in the registry of the court, a reference was ordered for that purpose only. Complainants were not interested in the manner of the distribution of this fund. But for this, the bill would have stood dismissed at the October rule day.

Complainant now seeks to set up, by means of a supplemental bill, an entirely different equity from that relied upon in the original bill. The defendants insist: That, under well-settled rules of equity practice, it is too late for complainant to assert a new and distinct ground for relief, by way of a supplemental bill—that, in so far as the proposed bill sets up an agreement on the part of defendant Green to insure the property for the benefit of complainant, it appears from its allegation that the letter relied upon as the evidence of such promise was in complainant's possession before the institution of the suit and before the first supplemental bill was filed. That no cause is shown,

or suggested, why it was not alleged or referred to in the bill. That, as to the agreement made between the defendants, April 7, 1908, at the date of the sale by Green and wife to Hill and Johnson, it appears from the exhibit filed that said agreement was recorded in the office of the register of deeds of Pitt county on March 9, 1909, more than a year before this cause was argued and submitted to the court. And that there is no averment that complainant was not advised of its existence.

Judge Story says:

"A supplemental bill is, in the first place, proper whenever the imperfection in the original bill arises from the omission of some material fact which existed before the filing of the bill, but the time has passed in which it can be introduced into the bill by amendment. This may arise either from the importance of the fact not being understood in the preceding stages of the cause, and therefore not being put in issue; or from the fact itself not having come to the knowledge of the party until after the bill was filed. In either case, the filing of a supplemental bill is not always a matter of course; but sometimes special leave must be asked of the court, as, for example, when it seeks to change the original structure of the bill and to introduce a new and different case." Story's Eq. Pleadings, § 333.

"The plaintiff must show that he could not have availed himself of the opportunity of introducing the new facts at any antecedent stage of the cause by way of amendment; or that they were of a nature not proper to be introduced by an amendment, as, for example, events which had occurred since the filing of the bill. Therefore, when a supplemental bill was filed after the hearing of the original bill stating additional facts' which arose and were known to the plaintiff before he filed his original bill, and praying that other matters might be taken into the account ordered to be taken before the master in the cause, the court held that the bill was demurrable, and that it came in too late a stage of the proceedings. The plaintiff should either have amended his bill on the defendant's answering it, or at least he should have applied to the court for leave to amend, or to file a supplemental bill in an earlier stage of the proceedings." Id., note.

Mr. Street notes the tendency of the court to allow amendments more freely than formerly, both by observance, and liberal interpretation of the statutes (Rev. St. § 954 [U. S. Comp. St. 1901, p. 696]) and rules of court, saying:

"Under the present practice of the federal courts, all proper amendments can be allowed at any juncture prior to the entry of the final decree. A supplemental bill is, therefore, no longer necessary in these courts to enable a party to have the benefit of facts that happen before the suit is brought but are only discovered while the suit is in progress. As to all such facts and matters the plaintiff can now amend; and, having the right to amend, he ought to pursue this course rather than to ask leave to file the supplemental bill. The extension of the right to amend has, to that extent, contracted the right to file the supplemental bill." 2 Street's Fed. Eq. Prac. § 1157.

By equity rule 57 it is provided that:

"Whenever any suit in equity shall become defective from any event happening after the filing of the bill, or for any other reason, a supplemental bill, or a bill in the nature of a supplemental bill, may be necessary to be filed in the cause, leave to file the same may be granted by any judge of the court on any rule day upon proper cause shown and due notice to the other party."

The wisdom of the foregoing rule and its applicability is obvious in this case. When the original bill was filed, the property upon which complainant claimed to have a lien was in existence. The sole purpose of the bill was to invoke the aid of the court to enforce the alleged lien. Subsequently, the defendants Green and wife sold to Hill and Johnson, who insured the defendants against loss by fire as, and upon, the terms set out in the supplemental bill. The property was destroyed by fire, and the companies adjusted the loss and were ready to pay the amount. These conditions presented a state of facts clearly within the provisions of the rule. The court permitted complainant to file its supplemental bill, and the proceeds of the insurance policies were paid into the registry of the court. This was September, 1908. The cause pended upon answer to the bill and supplemental bill and the cross-bill and answer until July, 1910, when it was submitted upon the pleadings and decided upon its merits. It thus appears that the cause pended in this court for four years, and two years have elapsed since the supplemental bill was filed and the proceeds of the insurance policies paid into the court. No fact is alleged in the proposed supplemental bill which has occurred since the supplemental bill of October, 1908, was filed; nor is there any allegation that the facts now alleged as the basis for relief were not known to complainant prior to the hearing and making of the decree.

At any time, under the liberal rule of the court for amending pleadings, there can be no doubt that, upon application, the court would have permitted complainant to set these facts up by way of amendment.

"Before leave will be granted to file a supplemental bill attacking a decree on the ground of newly discovered facts. it must appear that those facts could not have been discovered in the exercise of reasonable diligence in time to have been set up in the original bill or an amended bill." 2 Street's Fed. Eq. Prac. 1184.

Complainant has had full opportunity and ample time to bring the matters, now alleged, to the attention of the court. It would seem that, in view of the authorities cited and the rules of the court, it should not, at this late day, after a full hearing upon the merits of the case disclosed upon the original and first supplemental bill, be permitted to continue the litigation by interjecting into the case a new and different ground for relief.

The language of Mr. Justice White in Warner v. Godfrey, 186 U. S. at page 378, 22 Sup. Ct. at page 857 (46 L. Ed. 1203), is appropriate here. After the cause had gone to decree upon the original pleadings, complainant sought, by way of amendment, to interject a new ground for relief. The learned justice says:

"It would be highly inequitable to permit a litigant to press with the greatest pertinacity, for years, unfounded demands for specific and general relief, however much confidence he may have had in such charges, necessitating large expenditures by the defendants to make a proper defense thereto, and then, after the submission of the cause, when the grounds of relief actually asserted were found to be wholly without merit, to allow averments to be made, by way of amendment, constituting a new and substantive ground of relief. This is especially applicable when the facts upon which such amendment rests were known at the incipiency of the litigation, and

the character of the relief was such as called for promptness in asserting a right thereto."

While the language applied to the facts in that case may be stronger than the facts in this case justify, the principle is the same. While the merits of a case must not be sacrificed to forms, or technical objection to pleadings, experience has demonstrated that a reasonable adherence to well-settled rules of pleading and procedure is essential to protect the substantial rights of litigants. In this cause the defendant Green, in his cross-bill, strongly avers, under oath, that complainant breached its contract with him and utterly failed to comply with its guaranty in regard to the machinery, resulting in large damage and serious loss, exceeding the balance of the purchase price. This is denied by complainant. Without regard to the merits of this phase of the controversy, it is referred to as illustrating the probable injustice of opening up the controversy, after decree, by permitting complainant, by way of a supplemental bill, to introduce an entirely new ground for relief. It is by no means clear that the new matter, sought to be introduced, would avail complainant.

In regard to the allegation that defendant Green promised to insure the property for the benefit of complainant, no copy of the letter referred to is filed, or attached, to the bill. Assuming, however, that such a promise was made, it would seem that no very great importance was attached to it. The property was purchased on, or about, the 21st of April, 1906, and very soon thereafter defendant declined to pay the balance due on account of the purchase money, and on December 4, 1906, the notice of lien was filed. Ten days thereafter the original bill was filed. The sale to Hill and Johnson was not made until April 7, 1908, when they, and not the defendant Green, insured the property making the loss payable to Green and his wife. It would be quite difficult to fix upon the funds, accruing from this policy, a trust, in favor of complainant, upon the theory that it was taken out pursuant to, and in execution of, the alleged agreement. In regard to the claim asserted under the agreement of April 7, 1908, there is certainly nothing in the language of the contract indicating a purpose to declare a trust for the benefit of complainant; it purports to be made for the purpose of indemnifying the purchasers against loss or harm, in the event that complainant shall establish a claim against the property, paramount to the right acquired by the purchaser. The case is different from those wherein courts of equity have subrogated the creditor to the rights of a surety or indorser in property conveyed to him for the purpose of indemnity against loss growing out of the contractual liability. Trusts are impressed upon property by courts of equity either to effectuate the intention of the parties to contracts, or to prevent fraud; the latter being called trusts ex maleficio. The underlying principle upon which trusts of the last class are declared is that the property sought to be reached has been obtained by fraud—that is, under a promise to hold it in trust, or by reason of some duty, obligation, or relationship, which the party owes or sustains to the person injured or defrauded by the failure to discharge the duty or obligation assumed—or imposed by the law. A mere breach of con-

tract, as the failure to pay the purchase price, does not entitle the vendor to have the vendee declared a trustee for his benefit. The only averment in the supplemental bill, in this respect, is that:

"The defendant R. Green, owning (an) interest in a lot which he and his wife had purchased for $400 only, induced your complainant to erect, construct, and install one of its valuable ice-making plants upon the said lot, the deed for which, as an estate by entireties, was taken in the name of said R. Green and wife, Louisa A. Green, after your orator had begun the constructing, erecting, and installing of said ice-making plant; he having represented himself to your orator as being a person that could command means or security to carry out any business enterprise in which he was engaged."

Following this language is the averment in regard to an alleged promise to insure the property for the benefit of complainant. It will be noted that there is no suggestion that Green made any false statement, or that he was not able "to command means or security," as represented. This language falls very far short of an allegation of a specific, fraudulent representation sufficient to cause a court of equity to impress a trust upon the property ex maleficio. It is not alleged that Green represented that the ice-making plant was to be erected on land belonging to him, or that he paid the purchase money for the land, or that the deed to his wife and himself was withheld from registration. On the contrary, it appears that it was recorded before complainant completed the erection of the plant. The transaction, in any aspect of the pleadings, appears to have been an outright sale of the property, one-third of the price being paid cash, and credit extended for the balance, upon the personal credit of the purchaser. Eliminating the allegation in regard to the lien, which has been disposed of by the decree of October 3, 1910, it is difficult to perceive any ground for equitable relief or to sustain the jurisdiction of this court. The parties have a controversy based upon mutual allegations of a breach of contract, which should be tried in a court of law before a jury. What the result of such trial will be is, of course, not a matter for the thought of this court. They are not involved, nor is either party estopped to litigate them in a court of law by the decrees rendered herein.

Being of the opinion that complainant is not entitled, under the rules of pleading and practice, in this court, to file the supplemental bill, the application is denied. The cross-bill of defendant Green is dismissed, at his cost. The exceptions to the report of Julius Brown, special master, are overruled, and the report confirmed. Let a decree be drawn accordingly.